IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENA HARRIS, as administrator of the Estate of CHAUNGENE L. WARD, deceased, and MONICA NOLAN, | 8:09-CV-349 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| OLEG VELICHKOV, et al., | |
| Defendants. | |

  This matter is before the Court on the Motion for Summary Judgment (filing 119) filed by defendant FedEx National LTL, Inc. (FedEx), and a related Objection Pursuant to Rule 56(c)(2) (filing 133) filed by FedEx with respect to the evidence offered by the plaintiffs in opposition to the summary judgment motion. As explained below, the Court finds that FedEx's motion for summary judgment should be granted, and that its 56(c)(2) objection should be sustained on the basis of relevance.

BACKGROUND

  This case arises out of an automobile accident. The plaintiffs are the estate of Chaungene L. Ward, the decedent who was killed in the accident; and Monica Nolan, who was injured in the accident. Filing 120 at 2,9.[1] The defendants are Oleg Velichkov, the driver of the vehicle that struck Ward's; Mickey's Trucking Express, Inc., which owned Velichkov's vehicle; Fresh Start Inc., which employed Velichkov; Milco and Nermin Doneski, who are husband and wife, and owned Mickey's and Fresh Start, respectively; and

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1). Except where noted, the facts stated in this Memorandum and Order are contained in the statement of facts of FedEx's summary judgment brief (filing 120) and not controverted by the plaintiffs.

FedEx, which contracted with Fresh Start for transportation services. Filing 120 at 2-4,9-10.

The primary issue presented by FedEx's motion for summary judgment is whether FedEx can be held liable for Velichkov's alleged negligence. This, as will be explained below, turns on the relationship (or lack thereof) between FedEx and Velichkov. FedEx owned its own tractors and trailers and is licensed to operate as a motor carrier. Filing 121-2 at 10-12. But FedEx also contracted with various motor carriers to provide what it called "line haul" service: transportation between cities where FedEx service centers are located. Filing 120 at 4. Fresh Start was a so-called "power only" contractor for line haul services, meaning that Fresh Start provided a driver with a tractor to haul FedEx's trailers (as opposed to a driver with a tractor and trailer). Filing 120 at 5,10. FedEx pays power-only contractors on a per-mile rate, based upon the established mileage between the service centers. Filing 120 at 5-7. Those payments are made to the carrier, not the individual drivers. Filing 120 at 7. FedEx did not pay expenses or allowances on such contracts, withhold any taxes, or pay workers' compensation or other benefits for such contractors. Filing 120 at 5-6. Power-only contractors pay for their own liability, hazardous-materials, and cargo coverage. Filing 120 at 7. The agreement between FedEx and Fresh Start specifically identified the relationship as that of "independent contractor." Filing 120 at 7.

The plaintiffs do dispute FedEx's statements of fact with respect to some aspects of FedEx's control over power-only drivers' activities. *See* filing 127. However, it appears that their disagreement is less over the facts, and more over the legal significance of those facts. To begin with, FedEx asserts that power-only drivers do not perform labor at service centers to load any trailers, filing 120 at 6, but the plaintiffs claim that drivers were required by contract to "'verify the trailer seal, match the paperwork . . . and leave with the load and all paperwork in order, immediately.'" Filing 127 at 3. The Court does not view those statements as being inconsistent. It is clear from an examination of the evidence that FedEx's statement was meant to convey that the drivers did not load the trailers, i.e., physically place the cargo in the trailer; the plaintiffs' statement is not to the contrary.

Similarly, the plaintiffs controvert FedEx's contention that FedEx permitted power-only drivers to control what route to follow, filing 120 at 6; the plaintiffs point to a contractual addendum in which Fresh Start agreed that its drivers would, for instance, minimize time spent in high-crime areas, park units in secure areas when possible, and not take FedEx trailers to private residences. Filing 128-3. Again, the Court does not view the parties as really saying different things—it is apparent that while FedEx required Fresh Start's drivers to protect its cargo, FedEx did not, for instance, dictate

- 2 -

that transportation between particular service centers would follow particular highways.

Finally, the plaintiffs take issue with FedEx's contention that FedEx did not require a power-only driver to report to FedEx during a trip, filing 120 at 7; the plaintiffs note that FedEx was to be notified in the event of an accident, theft, or break-in. Filing 128-3. The plaintiffs are correct on that point, but have not contradicted FedEx's broader point that power-only drivers were not required to contact FedEx during the course of a *routine* trip between service centers.

On October 28, 2007, Velichkov and his co-driver were westbound in a tractor-trailer on Interstate 80 in York County, Nebraska. Filing 120 at 9. The tractor was owned by Mickey's and leased to Fresh Start. Filing 120 at 8. Velichkov and his co-driver had picked up two FedEx trailers in Cincinnati, Ohio, and were on the way to Salt Lake City, Utah. Filing 120 at 8. Velichkov was driving. Filing 120 at 9. The vehicle went onto the median and returned to the westbound lanes of the Interstate, but overturned, blocking both lanes of westbound traffic. Filing 120 at 9. Ward was driving a rental truck westbound on Interstate 80 and collided with the overturned tractor. Filing 120 at 9. Ward was killed, and Nolan, his passenger, was seriously injured. Filing 1 at 9; filing 29 at 5-6.

Nolan and Harris, the personal representative of Ward's estate, filed a complaint in this Court (filing 1). As pertinent to FedEx, the plaintiffs allege that the accident was caused by Velichkov's negligence, within the scope of his employment by FedEx, and that Velichkov's negligence was imputed to FedEx under the doctrine of *respondeat superior*. Filing 1 at 9-10,13-16. They also allege that Velichkov was using drugs and that FedEx knew or should have known that he was incompetent to drive, but negligently entrusted the vehicle to him anyway, causing the accident. Filing 1 at 18-19. And the plaintiffs allege that FedEx, as Velichkov's employer, caused the accident by not adequately training Velichkov, supervising him, or testing him for drugs. Filing 1 at 20. FedEx denied the relevant allegations. Filing 29 at 6-13.

The plaintiffs' complaint (filing 1) was filed on October 1, 2009. A scheduling order (filing 41) was entered on March 8, 2010, which set a deadline of April 9 for the plaintiffs to amend pleadings and/or add parties. That provision was reconfirmed on July 13 (filing 46). An amended scheduling order (filing 62) was entered on October 25, on the joint motion of the parties, extending certain deadlines. That order did not discuss an extended deadline for amending pleadings, and the initial deadline for amendment had long since passed. The same was true of the second amended scheduling order (filing 82), entered on July 28, 2011; the third amended

- 3 -

scheduling order (filing 87), entered September 7; and the *final* amended scheduling order (filing 90), entered October 11.

On November 23, 2011, the parties filed a Joint Motion to Amend Scheduling Order (filing 100) seeking yet another amendment. In particular, the plaintiffs now sought leave to file an amended complaint that would, among other things, "plead a theory of independent negligence against FedEx National." Filing 100. The Magistrate Judge entered an order (filing 101) denying the motion. The Magistrate Judge reasoned that the case had been pending for more than 2 years and "that to allow Plaintiffs to file an amended complaint so as to add the theory of independent negligence against FedEx National, and then give Defendants additional time to conduct discovery with respect to this amendment, would unduly delay this litigation." Filing 101. The parties reargued the Magistrate Judge's ruling in an off-the-record conference with then-Chief Judge Joseph F. Bataillon, who entered a text order (filing 109) finding that the Magistrate Judge's ruling was sound.

Nonetheless, the plaintiffs filed a motion to amend their complaint (filing 110). The Magistrate Judge entered yet another order (filing 112) denying the plaintiffs' motion. The plaintiffs then filed an objection to the Magistrate Judge's order (filing 113), which this Court overruled. Filing 140. Specifically, the Court explained:

> The plaintiffs argue that their original complaint (filing 1) stated claims for both negligent hiring and negligent entrustment on the part of FedEx. That much is true. But the plaintiffs' complaint premised those claims entirely upon allegations that FedEx was negligent in hiring, training, and supervising . . . Velichkov. The proposed amended complaint (filing 101-1), however, would add an entirely new theory of recovery. In the amended complaint, the plaintiffs allege that FedEx was negligent in contracting with . . . Fresh Start . . . and Mickey's . . . because FedEx knew or should have known that Mickey's . . . had a poor safety record. [*See* filing 101-1.] Even a liberal construction of the plaintiffs' original complaint would not have suggested this theory of liability. The plaintiffs' characterization of their amended complaint as a "formality" that serves to "'clarify' the causes of action", *see* filing 114 at 8, is without merit.

Filing 140 at 2-3.

FedEx filed a Motion for Summary Judgment (filing 119), premised largely on the facts set forth above. Summarized, FedEx's motion is based on its contention that there are no facts supporting imputation of Velichkov's

alleged negligence to FedEx. *See* filing 120 at 2. The plaintiffs' opposition to that motion relies in part on evidence that, generally, is consistent with the theory of liability that they were *not* permitted to amend their complaint to allege. *See* filing 127. Specifically, they point to evidence suggesting that Mickey's had a poor safety rating, which according to their expert witness should have alerted shippers that Mickey's was unsafe and should not be used. Filing 127 at 4-5. The plaintiffs also note the close relationship between Mickey's and Fresh Start, and contend that Fresh Start was created by Mickey's in order to conceal Mickey's poor safety record from potential customers. Filing 127 at 6-7. The plaintiffs contend that FedEx employees should have been aware of the relationship between Mickey's and Fresh Start, but failed to perform due diligence with respect to Fresh Start before contracting with it. Filing 127 at 7-9.

FedEx filed a Fed. R. Civ. P. 56(c)(3) objection (filing 133) to much of the evidence presented by the plaintiffs in opposition to summary judgment. In addition to objecting on foundational grounds, FedEx objects that the plaintiffs' evidence is irrelevant to the extent that it is intended to prove that FedEx was negligent in hiring Fresh Start, as opposed to Velichkov, because the plaintiffs' operative complaint only alleges negligence in hiring and supervising Velichkov. *See* filing 132 at 5-7. Before the Court now are FedEx's Motion for Summary Judgment (filing 119) and Objection Pursuant to Rule 56(c)(2) (filing 133).

SUMMARY JUDGMENT STANDARD

The Court's analysis begins with some well-established propositions. Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to

show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson, supra*, 643 F.3d at 1042.

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The Court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial. *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307 (8th Cir. 1993). A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). And when such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. Fed. R. Civ. P. 56 advisory committee's note.

## ANALYSIS

The Court's analysis of the plaintiffs' claims is controlled by Nebraska's substantive law.[2] Generally, under Nebraska law, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Haag v. Bongers*, 589 N.W.2d 318 (Neb. 1999). FedEx argues that Fresh Start was an independent contractor engaged by FedEx, so FedEx is not liable for the acts or omissions of Velichkov, Fresh Start's employee.

In response, the plaintiffs offer several theories of liability. They will be discussed in greater detail below, but briefly summarized, the plaintiffs argue that FedEx is potentially liable because (1) FedEx failed to exercise reasonable care in hiring its independent contractor, Fresh Start; (2) under federal motor carrier safety regulations, FedEx had a nondelegable duty to ensure that drivers operate their vehicles in a safe manner; (3) there is a genuine issue of material fact as to whether Velichkov was an employee of

---

[2] When neither party raises a conflict of law issue in a diversity case, a federal court applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n. 3 (8th Cir. 2003).

- 6 -

FedEx under federal motor carrier safety regulations and Nebraska law; and (4) FedEx negligently entrusted its trailers to Velichkov because federal motor carrier safety regulations required FedEx to verify that Velichkov was properly trained in the operation of double trailers. The Court will address each of these theories in turn.

### REASONABLE CARE IN CONTRACTING WITH FRESH START

FedEx notes that under Nebraska law, an employer may be subject to liability for physical harm to third persons caused by the employer's failure to exercise reasonable care in selecting an employee, even if the employee is an independent contractor. *Kime v. Hobbs*, 562 N.W.2d 705 (Neb. 1997). The plaintiffs argue that FedEx was negligent in contracting with Fresh Start, because Mickey's had a poor safety rating (according to the plaintiffs' expert witness) and FedEx knew or should have known that Fresh Start was associated with Mickey's. The plaintiffs also argue that FedEx was negligent in contracting with Fresh Start because at the time of the contract, Fresh Start had no safety rating of its own.

FedEx replies that these arguments are beyond the scope of the plaintiffs' complaint. FedEx's 56(c)(2) objection is based on the same contention. Essentially, FedEx is arguing that the plaintiffs' theory is outside the pleadings and that as a result, the evidence supporting that theory is irrelevant and therefore objectionable. As suggested by the Court's Memorandum and Order of February 21, 2012 (filing 140), the Court agrees with FedEx.

Fed. R. Civ. P. 8(a) provides simply that pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. But the essential function of notice pleading is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved. *Northern States Power Co. v. Federal Transit Admin.*, 358 F.3d 1050 (8th Cir. 2004). While the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims which were not pled, late into the litigation, for the purpose of avoiding summary judgment. *Id.*; *accord, Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856 (8th Cir. 2010); *Rodgers v. City of Des Moines*, 435 F.3d 904 (8th Cir. 2006).

As explained above and in the Court's February 21, 2012, order (filing 140), the negligent hiring and negligent entrustment claims set forth in the plaintiffs' complaint were premised entirely upon allegations that FedEx was negligent in hiring, training, and supervising Velichkov. There is nothing in the complaint that would have notified FedEx that the plaintiffs were seeking damages arising out of FedEx's decision to contract with Fresh Start.

*See Cole, supra.* The complaint alleges that the defendants should have known Velichkov was an unsafe driver—not that FedEx should have known Fresh Start was an unsafe company. *See, id.*; *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees,* 558 F.3d 731 (8th Cir. 2009). There is nothing in the complaint about Fresh Start's safety rating, Mickey's' safety record, or FedEx's duty to investigate either. Having not raised those facts in their complaint, the plaintiffs cannot rely on them now. *See Satcher, supra.*

For similar reasons, the Court finds merit to FedEx's 56(c)(2) objection to plaintiffs' filings 128-1 and 128-2, submitted in opposition to summary judgment. Filing 128-1 contains the company safety profiles for Mickey's and Fresh Start, and filing 128-2 contains the opinion of plaintiffs' expert witness that FedEx disregarded an obligation to perform due diligence in investigating and screening motor carriers with whom it contracted. The Court finds that because the plaintiffs' complaint did not allege that FedEx was negligent in contracting with Fresh Start, filings 128-1 and 128-2 are not relevant to any fact of consequence in determining the action, and are therefore inadmissible. *See* Fed R. Evid. 401(b) and 402. The Court sustains FedEx's 56(c)(2) objection based on relevance, and does not comment on any of the other grounds asserted in support of FedEx's objection.

Simply put, the plaintiffs' argument is an attempt to inject an issue into the case over 2 years after their complaint was filed, and nearly 2 years after the deadline passed for amending their complaint. It is contrary to proper pleading and scheduling practices and does not defeat FedEx's motion for summary judgment.

## NONDELEGABLE DUTY

As noted above, the general rule is that the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Haag, supra.* But one of the exceptions to that general rule is when the employer by rule of law or statute, has a nondelegable duty to protect another from harm caused by the contractor. *See, id.*; *Kime, supra.* The plaintiffs argue that FedEx had a nondelegable duty based upon 49 C.F.R. § 390.11.[3] That section of the federal motor carrier safety regulations provides that

> [w]henever in part 325 of subchapter A [dealing with noise emissions] or in this subchapter [containing general motor carrier

---

[3] A nondelegable duty can also exist when the contractor's work presents a peculiar risk of danger, but the Nebraska Supreme Court held in *Kime, supra* that operating a loaded tractor-trailer presents only ordinary risk, and the plaintiffs do not argue that a peculiar risk was presented here.

- 8 -

safety regulations] a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition.

§ 390.11.

But the applicability of that section to FedEx rests on the assumption that FedEx is the "motor carrier" at issue, within the meaning of this regulation. The Court assumes, without deciding, that the regulation would support a nondelegable duty if it applied to FedEx—although, the Court notes, the plaintiffs fail to cite any authority supporting the proposition that this federal regulation can create or enforce a duty under state law. The Court need not decide that question because the Court concludes that FedEx was not acting as a motor carrier in this case. Instead, Fresh Start was. The plaintiffs seem to assume that because FedEx is licensed as a motor carrier, FedEx is *always acting* as a motor carrier, regardless of the transaction at issue. But that assumption is inconsistent with the regulatory scheme.

Under these regulations, a motor carrier is either a for-hire motor carrier, engaged in the transportation of goods or passengers for compensation, or a private motor carrier, which provides transportation of property or passengers by commercial motor vehicle, but is not for hire. 49 C.F.R. § 390.5. The term "motor carrier" also includes the term "employer," which is a person who owns or leases a commercial motor vehicle in connection with a business affecting interstate commerce. *Id.* A "shipper," on the other hand, is someone who sends or receives property transported in interstate or foreign commerce. 49 C.F.R. § 376.2(k). And the relevant regulations, including § 390.11, are applicable to those who transport property, not those who send or receive it. 49 C.F.R. § 390.3(a).

In this case, FedEx was acting as a shipper of goods, not a motor carrier. Fresh Start was the motor carrier, hired by FedEx to provide transportation services from one FedEx service center to another. The fact that FedEx might have had the authority to operate as a motor carrier is irrelevant to the transaction at issue in this case. *See*, *Alaubali v. Rite Aid Corp.*, 2007 WL 3035270 (N.D. Cal. Oct. 16, 2007), *aff'd,* 320 Fed. Appx. 765 (9th Cir. 2009); *Caballero v. Archer,* 2007 WL 628755 (W.D. Tex. Feb. 1, 2007); *Schramm v. Foster,* 341 F. Supp. 2d 536 (D. Md. 2004).[4] A transportation company may have authority to act as a shipper, broker, or

---

[4] The Court finds it interesting that the plaintiffs cited *Schramm v. Foster* extensively in support of their argument regarding reasonable care in hiring an independent contractor—but completely failed to mention or distinguish the case insofar as it discussed the relevant provisions of the C.F.R.

- 9 -

carrier, and the Court must focus on the specific transaction at issue, not whether FedEx acts as a motor carrier in other transactions. *Caballero, supra*; *Schramm, supra.*

One of the bedrock principles of statutory and regulatory interpretation is to avoid interpretations that would produce absurd results, *see e.g. Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982), and the plaintiffs' construction of the relevant regulations would produce just such an absurdity. For instance, the regulations require motor carriers to obtain and maintain records on each of the drivers they employ, such as driving and medical records. *See* 49 C.F.R. §§ 391.25 and 391.51(a). The motor carrier must retain the driver's application for employment. § 391.51. The motor carrier must even conduct a road test for the driver, or designate a tester. 49 C.F.R. § 391.31. All of those requirements make sense when a motor carrier is actually employing a driver, i.e., hiring the driver and paying him or her for services. The relevant documents would be in the possession and control of the motor carrier.

But to read FedEx as a "motor carrier" in this case, and thereby an employer of Fresh Start or Velichkov, would not only burden FedEx with the compliance duty assigned by § 390.11—it would also burden FedEx with the nonsensical duties to conduct road tests, and retain records, for drivers with whom it has no relationship. Simply put, it makes no sense to read the C.F.R. to require FedEx to retain the employment application of someone who never applied to it for employment. Nor does it make sense to place such a burden on FedEx because it has the *ability* to act as a motor carrier and *could* have transported the cargo in question, when another shipper could establish an effectively identical relationship with a carrier such as Fresh Start and not be regarded as a motor carrier. *See Caballero, supra*.

If the regulations are read *in pari materia*, however, *see McFarland v. Scott*, 512 U.S. 849 (1994), their application to this case makes perfect sense. The plaintiffs' attempt to "bootstrap" FedEx into "motor carrier" status by stretching the regulatory language fails because the definitions of motor carrier and employer, as used in the regulations, describe precisely the role assumed by Fresh Start in this instance as an independent contractor. *Alaubali, supra,* 2007 WL 3035270 at 6. "[Fresh Start], not [FedEx], controlled the execution of those services." *Alaubali, supra,* 320 Fed. Appx. at 767; *see also Caballero, supra*. In this case, FedEx chose not to use its carrier authority to transport its cargo from Cincinnati to Salt Lake City; instead, it shipped that cargo via another authorized carrier. *See Schramm, supra.* And it was Fresh Start, not FedEx, that assumed responsibility for the duties and prohibitions imposed on the drivers it employed. *See Alaubali,* 2007 WL 3035270; *see also* § 390.11.

- 10 -

Nor does this leave the plaintiffs without a remedy, even if Fresh Start might seem to be less capable of satisfying a judgment than a company the size of FedEx. Federal law provides that the Secretary of Transportation may register a motor carrier only if the registrant files a bond, insurance policy, or other type of security approved by the Secretary. 49 U.S.C. § 13906. A commercial motor carrier may operate only if registered to do so, and must be willing and able to comply with minimum financial security requirements. *See,* 49 U.S.C. § 13901; *Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868 (10th Cir. 2009). This requirement, and the regulations promulgated by the Federal Motor Carrier Safety Administration, require interstate motor carriers to obtain a special endorsement providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence. *Yeates, supra.* The purpose of requiring such proof of financial responsibility is to ensure that the public is adequately protected from the risks created by a motor carrier's operations and to ensure the collectability of a judgment against the motor carrier. *Great West Cas. Co. v. General Cas. Co. of Wisconsin,* 734 F. Supp. 2d 718 (D. Minn. 2010). In sum, this means that FedEx's use of an independent contractor did not place the public at particular risk; Fresh Start, as a licensed motor carrier, would have been required to provide sufficient proof of financial responsibility to provide a source of recovery for members of the public, such as the plaintiffs, who are injured in a collision.

For the foregoing reasons, the Court finds that § 390.11 did not place a nondelegable duty on FedEx to guarantee Velichkov's compliance with federal regulations. Even if FedEx could have acted as a "motor carrier" within the meaning of § 390.11, it did not do so in this case.[5]

### EMPLOYEE STATUS OF VELICHKOV

The plaintiffs present one more theory against applying the general rule that the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *See Haag, supra.* They argue that instead of being an employee of an independent contractor, Velichkov was actually an employee of FedEx.

---

[5] The Court notes the plaintiffs' citation to Neb. Rev. Stat. § 25-21,239 (Reissue 2005) as showing that their negligent entrustment argument "is consistent with Nebraska law and public policy." Filing 127 at 26. But that section clearly applies only to the owner of a truck, tractor-trailer, or trailer who has *leased* that equipment to another for a period of less than 30 days. There is no indication that FedEx was a lessor, and the Court does not read the plaintiffs' argument as relying on the statute for anything more than tangential support. This statute might be useful against Mickey's, but not FedEx.

They offer two arguments in support of this claim. The first is quickly disposed of. The plaintiffs argue that under § 390.5, an "[e]mployee . . . includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle). . . ." So, they claim, Velichkov must be considered an employee. It is questionable whether that definition was intended to have the effect of fundamentally rewriting state tort law. But leaving that aside, the plaintiffs are misapplying the definition. No one disputes that Velichkov was an employee of *someone*. But who was his employer? The obvious answer is Fresh Start. The plaintiffs' argument fails because Velichkov was not an independent contractor with anyone. He had no contract with FedEx, and he was undeniably an employee of Fresh Start. So, it is Fresh Start, not FedEx, that is vicariously liable for his alleged negligence.

The plaintiffs' second argument that Velichkov was an employee of FedEx is based in Nebraska common law. There is no single test to determine whether or not a truck driver such as Velichkov is an employee, as distinguished from an independent contractor. Such a determination must be made from all the facts in the case. *Kime, supra.* Whether an agency exists depends on the facts underlying the relationship of the parties irrespective of the words or terminology used by the parties to characterize or describe their relationship. *Id.* There are 10 factors which are considered in determining whether a person is an employee or an independent contractor: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Id.*

The plaintiffs focus exclusively on the first element: the right of control. The right of control is the chief factor distinguishing an employment relationship from that of an independent contractor.[6] *Kime, supra.* But in

---

[6] The Court notes that the employer of an independent contractor may also be liable if the employer retains some control over the relevant work and fails to exercise reasonable care

examining the extent of the employer's control over the worker in this context, it is important to distinguish control over the means and methods of the assignment from control over the end product of the work to be performed. An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used. *Id.* But even the employer of an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms. *Id.*

The plaintiffs rely on the contractual arrangement between Fresh Start and FedEx. In an addendum to their contract, Fresh Start agreed to several conditions on the conduct of its driver. *See* filing 128-3. For instance, the driver was not to leave the load unattended except for meal breaks, during which the tractor and trailer unit were to be visible. The driver was not to uncouple the trailer or take a FedEx unit to a private residence. The driver was to travel a minimum of 150 miles after loading, and was to be alert to being followed, especially when leaving the loading area. The driver was to minimize any time spent in a known high theft area. During breaks, the driver was to park the unit in a secured area if possible but at least in a well-lighted public parking area, and lock the tractor at all times. The driver was not to discuss the cargo with anyone, or mix the cargo with other shipments. And in the event of an accident, theft, or break-in, the driver was to call his or her carrier, and 911 in the event of a theft or break-in; the carrier was to call FedEx immediately. Filing 128-3.

According to the plaintiffs, this was enough control to at least create a genuine issue of fact as to whether Velichkov was an employee of FedEx. The Court does not agree, for three reasons. First, the plaintiffs again overlook the fact that Velichkov had no contract with FedEx, so he was not an independent contractor of FedEx. To the extent that the contract evidences a right of control, it is FedEx's right of control over *Fresh Start*, which was then required to use *its* authority over its employees to ensure that they took the required precautions with FedEx's cargo.

Second, as noted above, even the employer of an independent contractor may, without changing that relationship, exercise such control as is necessary to assure performance of the contract in accordance with its terms. *See*, *Omaha World-Herald v. Dernier*, 570 N.W.2d 508 (Neb. 1997); *Kime, supra*; *Stephens v. Celeryvale Transport, Inc.*, 286 N.W.2d 420 (Neb. 1979).

---

in the use of that control. *See id.; see also Haag, supra.* The plaintiffs do not rely on that theory here, nor does it appear to be applicable. *Compare, e.g., Haag, supra.*

Here, FedEx required its independent contractor to instruct its drivers to take particular measures to protect the security of FedEx's cargo. Those requirements were to assure performance of the delivery—in other words, to control "the final result of the work" instead of "the specific manner in which the work is performed." *Dernier, supra*, at 223. Compare *Kime, supra.*

Finally, the plaintiffs' focus on the element of control ignores the remaining nine factors listed above, several of which weigh (and weigh heavily) in favor of an independent contractor relationship. Fresh Start was engaged in a distinct business from FedEx, insofar as Fresh Start was not exclusively bound to FedEx's shipments and could take work from other shippers. *See, Dernier, supra; Kime, supra; Eden v. Spaulding*, 359 N.W.2d 758 (Neb. 1984). Velichkov, in particular, could have been substituted for another driver. *See, Dernier, supra; Kime, supra; Eden, supra; Stephens, supra.* Long haul trucking is often performed outside the direct supervision of the shipper. *See Eden, supra.* And significantly, Fresh Start provided the instrumentalities and tools of performance—it provided the truck, fueled and maintained the truck, was required to carry its own insurance, and was required to bring its own authorization to operate as a motor carrier. Filing 121-5 at 103-04. *See, Dernier, supra; Kime, supra; Eden, supra; Stephens, supra.* The contract specified a term of 1 year, renewable year-to-year. Filing 121-5 at 102.

Furthermore, Fresh Start was paid under the contract, not with wages. Fresh Start paid its employees, not FedEx. Filing 121-5 at 105. Normally an employee is compensated while he or she works. An independent contractor's compensation, on the other hand, usually depends on whether he or she makes a profit from the contract. *Dernier, supra; Kime, supra; Eden, supra; Spaulding, supra.* Nor did FedEx withhold taxes from its payments to Fresh Start; the failure to withhold taxes indicates that an independent contract exists. *Dernier, supra, Kime, supra; Eden, supra.* And perhaps most importantly, the contract between Fresh Start and FedEx clearly stated that their relationship was to be one of an independent contractor. Filing 121-5 at 105. Whether the parties believed they were creating a master-servant relationship is an important guideline. *Dernier, supra, Kime, supra; Eden, supra.* And the Court again notes that while there is scant evidence that FedEx had an "employment relationship" with Fresh Start, there is even *less* indication that FedEx had an employment relationship with Velichkov—and that is the linchpin of the plaintiffs' argument.

Ordinarily, a party's status as an employee or an independent contractor is a question of fact. However, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Kime, supra.* And when there is

a written contract between the parties which denominates and describes the relationship as that of independent contractor, and nothing in the manner of performance by the parties is inconsistent with the relationship described, then the independent contractor is not deemed to be an employee as a matter of law. *Dernier, supra*; *see, also,* *Eden, supra*; *Stephens, supra.* That is the case here. The record establishes, as a matter of law, that Fresh Start was an independent contractor and that Velichkov was Fresh Start's employee. There is no evidence from which a reasonable trier of fact could conclude that Fresh Start was FedEx's "employee"—much less evidence that Velichkov was.

NEGLIGENT ENTRUSTMENT

The plaintiffs also argue that FedEx is liable under a theory of negligent entrustment. As the Court understands their argument, it is that FedEx had a duty under federal law to ensure that Velichkov was properly certified to operate a double trailer. But, the plaintiffs contend, FedEx did not perform that duty, and entrusted two trailers to Velichkov, despite the fact that he was not properly certified. This, the plaintiffs contend, supports a claim for negligent entrustment under Nebraska law.

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others. *DeWester v. Watkins*, 745 N.W.2d 330 (Neb. 2008) (*citing* Restatement (Second) of Torts § 308 (1965)). And one who supplies a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by the use, is subject to liability for physical harm resulting to them. *Id.* (*citing* Restatement (Second) of Torts § 390 (1965)). *See, also,* Restatement (Third) of Torts: Physical and Emotional Harm § 19 cmt. e (2010); *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907 (Neb. 2010).

But the only reason identified by the plaintiffs that FedEx knew or should have known that Velichkov was not certified to operate a double trailer is a federal safety regulation—one of the same regulations that, as discussed above, did not apply to FedEx in this case. Specifically, a driver who wishes to operate a longer combination vehicle (LCV) such as a double trailer must be trained and certified to do so. *See* 49 C.F.R. §§ 380.101 *et seq*. And no "motor carrier" is to permit a driver to operate an LCV unless the driver has been issued an LCV driver-training certificate. § 380.113(a). A LCV driver is required to provide a copy of the certificate to his or her

employer to be retained in his or her driver qualification file, and the employer must provide evidence of the certification when requested by law enforcement. §§ 380.113(a) and 380.401(b).

The Court assumes that there is, at least, a genuine issue of fact as to whether Velichkov was properly certified.[7] But FedEx was not obliged, under federal law, to inquire about Velichkov's certification. As previously discussed, FedEx was not a "motor carrier" in this case. And it is clear from a reading of the relevant regulations, as described above, that the "motor carrier" bound by these regulations is the actual employer of an LCV driver. *See Alaubali, supra*, 2007 WL 3035270. A driver is not required to carry his or her LCV certificate—rather, the certificate is provided to the driver's employer, to be retained along with the other documents a motor carrier is required to retain with respect to its drivers. FedEx neither employed nor contracted with Velichkov—FedEx contracted with Fresh Start, and Fresh Start employed Velichkov. If Velichkov was, in fact, not LCV-certified, that could only support a claim against Fresh Start, not FedEx. *See id.*

### FED. R. CIV. P. 54(B)

The Court finds, for the reasons explained above, that FedEx is entitled to judgment as a matter of law. The Court notes that when multiple parties are involved in an action, the Court may direct entry of a final judgment as to one or more, but fewer than all the parties if the Court determines that there is no just reason for delay. Otherwise, an order or other decision that adjudicates the rights and liabilities of fewer than all the parties does not end the action as to any of the parties and may be revised at any time before entry of a judgment adjudicating all the parties' rights and liabilities. Fed. R. Civ. P. 54(b).

In this case, the Court has the discretion to direct a final judgment as to FedEx. But the Court, having weighed and examined the competing interests involved in a certification decision, concludes that a final judgment

---

[7] The record on that point is not as definitive as the plaintiffs suggest. The plaintiffs contend that Velichkov "testified that he had a [commercial driver's license] with a double trailer endorsement, [but] this is only a first step in being qualified to operate a double trailer." Filing 127 at 25. But Velichkov's actual deposition testimony, when asked whether he had been trained to drive a double trailer, was that he *had* been trained, and that "you got to go and pass the test, and from there on, it's just the experience." Filing 121-1 at 44. The "test" to which Velichkov was presumably referring actually comes after the commercial driver's license to which the plaintiffs referred, and is in fact the last step of LCV training before issuance of a certificate. *See* 49 C.F.R. §§ 380.201 *et seq*. In other words, Velichkov implied that he had passed the test, which would have entitled him to a certificate. And he was not directly asked whether he had a certificate.

- 16 -

is not appropriate in this case at this time. *See [Huggins v. FedEx Ground Package System, Inc., 566 F.3d 771 (8th Cir. 2009)](#)*.

## CONCLUSION

The Court finds that FedEx is not, as a matter of law, liable for any negligence of Velichkov. Nor would the evidence permit a finding against FedEx based upon any of the theories of independent negligence presented by the plaintiffs' complaint. Therefore,

IT IS ORDERED:

1. FedEx's motion for summary judgment (filing [119](#)) is granted in all respects.

2. FedEx's [Fed. R. Civ. P. 56(c)(2)](#) objection (filing [133](#)) is sustained.

3. A separate judgment will not be entered at this time.

Dated this 4th day of May, 2012.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
United States District Judge